IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-024

Filing Date: June 10, 2013

Docket No. 33,257

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

LESTER BOYSE and CAROL BOYSE,

      Defendants-Respondents.

ORIGINAL APPEAL ON CERTIORARI
Fernando R. Macias, District Judge

Gary K. King, Attorney General
William H. Lazar, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jeffrey C. Lahann
Las Cruces, NM

for Respondents

OPINION

VIGIL, Justice.

I.     INTRODUCTION

{1}    This case requires us to interpret the New Mexico Constitution to determine whether it allows for the process of requesting and approving search warrants by telephone. Article II, Section 10 of the New Mexico Constitution requires search warrants to be based on a written showing of probable cause supported by oath or affirmation. We are asked to decide whether the written showing requirement necessarily means that the issuing judge or magistrate must see the writing in order to approve the search warrant. We interpret the

1

meaning of the word "showing" in Article II, Section 10 of the New Mexico Constitution as a presentation or statement of facts that can be made through audible or other sensory means as well as through visual means. Thus, we hold as a matter of law that the New Mexico Constitution allows for alternative methods for requesting and approving search warrants, including by telephone.

## II.    FACTUAL BACKGROUND

**{2}**    Lester and Carol Boyse (Defendants) were each charged with fifty-two counts of felony cruelty to animals contrary to NMSA 1978, Section 30-18-1(E) (2007), and fifty-five counts of misdemeanor cruelty to animals contrary to Section 30-18-1(B). They sought to suppress evidence discovered by the investigating officer because he obtained approval for a warrant to search their property from the magistrate judge by telephone rather than in person. The district court denied the motion. Defendants entered conditional pleas of no contest to 107 counts of misdemeanor cruelty to animals, preserving their right to appeal.

**{3}**    On August 21, 2008, officers from the Doña Ana County Sheriff's Department and the Mesilla Marshal's Department investigated a neighbor's complaint regarding a dead horse on Defendants' property. During the initial investigation, officer Jeff Gray from the Mesilla Marshal's Department learned that Defendants kept a large number of animals on their property. He also learned that there was a strong foul odor coming from Defendants' property. Officer Gray interviewed Defendant Carol Boyse, who admitted to having two dead horses on her property, keeping several other horses untended, and keeping an unknown number of cats inside her house, including three dead cats in her freezer.

**{4}**    Even though Officer Gray had obtained verbal consent from Defendant Carol Boyse to enter the house, his supervisor instructed him to obtain a search warrant. Officer Gray prepared a detailed, type-written affidavit as part of an application for a search warrant to investigate what he described as extreme animal cruelty at Defendants' property. By the time Officer Gray completed the search warrant application, the magistrate court was already closed, so he left a voice-recorded message for the on-call judge. The magistrate judge returned the call. Over the telephone, the magistrate judge administered an oath to Officer Gray, who then read the entire written affidavit verbatim. The magistrate judge approved the search warrant over the telephone, and Officer Gray noted the approval on the search warrant form. Officer Gray then immediately executed the search warrant. Officer Gray later obtained the magistrate judge's actual signature and initials on the search warrant and affidavit.

## III.    PROCEDURAL HISTORY

**{5}**    Defendants moved to suppress the evidence seized from their property, arguing that the search warrant was invalid because it was improperly obtained by telephone in violation of Article II, Section 10 of the New Mexico Constitution, Rule 6-208 NMRA, and Forms 9-213 and 9-214 NMRA of the New Mexico Rules of Criminal Procedure. Defendants argued

that, because the search warrant was invalid, their rights against unreasonable search and seizure by the government under Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment to the United States Constitution were violated.

**{6}**     The district court denied Defendants' motion, finding that the search warrant was based upon a sworn written statement of facts showing sufficient probable cause under the requirements of Article II, Section 10 and Rule 6-208. Defendants subsequently pleaded no contest to 107 counts of misdemeanor cruelty to animals, reserving their right to appeal the district court's denial of their suppression motion.

**{7}**     On appeal, the Court of Appeals reversed, interpreting the written "showing" of probable cause requirement in Article II, Section 10 to mean that a judge must see the writing before issuing a warrant. *See State v. Boyse*, 2011-NMCA-113, ¶ 16, 150 N.M. 712, 265 P.3d 1285. We granted certiorari to review the Court of Appeals' opinion.

## IV.     STANDARD OF REVIEW

**{8}**     This is a case of constitutional interpretation. "We review [questions] of statutory and constitutional interpretation de novo." *State v. Ordunez*, 2012-NMSC-024, ¶ 6, 283 P.3d 282 (internal quotation marks and citation omitted). "The most important consideration for us is that we interpret the constitution in a way that reflects the drafters' intent." *State v. Lynch*, 2003-NMSC-020, ¶ 24, 134 N.M. 139, 74 P.3d 73. In interpreting the Constitution, the rules of statutory construction "apply equally to constitutional construction." *State ex rel. Richardson v. Fifth Judicial Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 17, 141 N.M. 657, 160 P.3d 566.

**{9}**     Under the rules of statutory construction, we first turn to the plain meaning of the words at issue, often using the dictionary for guidance. *See State v. Nick R.*, 2009-NMSC-050, ¶ 18, 147 N.M. 182, 218 P.3d 868 (recognizing that our courts interpret the intended meaning of statutory language by consulting the dictionary to ascertain the words' ordinary meaning). The plain meaning rule requires that statutes "be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason." *State v. Maestas*, 2007-NMSC-001, ¶ 9, 140 N.M. 836, 149 P.3d 933 (internal quotation marks and citation omitted).

## V.     DISCUSSION

**{10}**     Defendants argue, and the Court of Appeals agreed, that telephonically approved search warrants violate Article II, Section 10 of the New Mexico Constitution because a written showing of probable cause cannot be made over the telephone. *See Boyse*, 2011-NMCA-113, ¶ 16. Defendants assert that the New Mexico Rules of Criminal Procedure do not provide for the process of requesting and approving search warrants by telephone. As

a policy argument in support of their position, Defendants point out that procedural safeguards imposed in jurisdictions that recognize telephonic search warrants were not followed by the law enforcement officers and the court officials in this case. Defendants argue that because the search warrant in this case was invalid, their Fourth Amendment rights under the United States Constitution were violated. We address each of Defendants' points in turn, beginning with their argument under the New Mexico Constitution.

## A. THE NEW MEXICO CONSTITUTION ALLOWS FOR REQUESTING AND APPROVING SEARCH WARRANTS BY TELEPHONE

**{11}** Defendants argue that the process of requesting and approving search warrants by telephone violates the plain language of Article II, Section 10 of the New Mexico Constitution, Rule 6-208, and Forms 9-213 and 9-214. We disagree.

The New Mexico Constitution provides that:

> [t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without *a written showing* of probable cause, supported by oath or affirmation.

N.M. Const. art. II, § 10 (emphasis added). Similarly, our rules of criminal procedure for the magistrate courts provide that a warrant "shall contain or have attached the sworn written statement of facts showing probable cause for its issuance and the name of any person whose sworn written statement has been taken in support of the warrant." Rule 6-208(B); *accord* Rule 5-211(B) NMRA (containing the same requirement for a search warrant obtained in district court); Rule 7-208(B) NMRA (containing the same requirement for a search warrant obtained in metropolitan court); Rule 8-207(B) NMRA (containing the same requirement for a search warrant obtained in municipal court).

**{12}** We recently amended our rules of criminal procedure for the district courts to specifically recognize the process of requesting and approving search warrants through remote means, including by telephone. *See* Rule 5-211(F) & (G). But the rules were silent as to the recognized methods for requesting a search warrant on August 21, 2008, when the magistrate judge approved the search warrant at issue in this case. *See* Rule 5-211 (1980) (amended 2012); Rule 6-208; Rule 7-208; Rule 8-207. Notably, Rules 6-208, 7-208, and 8-207 have since been amended to provide for remote issuance of search warrants. *See* Supreme Court Order No. 13-8300-011 (adopting amendments to these rules, which will be effective July 15, 2013).

**{13}** Therefore, the question before us is whether telephonic approval of search warrants was allowed because at the time the rules did not expressly disallow the issuance of a search warrant telephonically. To answer this question we interpret the constitutional requirements

4

for search warrants as they existed at the time the magistrate judge issued the search warrant in this case.

1. **THE PLAIN MEANING OF "SHOWING" IS A PRESENTATION OR STATEMENT OF FACTS OR EVIDENCE**

**{14}** Defendants argue that a written "showing" of probable cause in support of a search warrant cannot be made over the telephone because "[t]o show something obviously means to present it for viewing." Yet, placing something into sight or view is just one of multiple definitions for "show" and "showing." *See, e.g.*, *Webster's Third New Int'l Dictionary of the English Language Unabridged (Webster's Dictionary)* 2105-06 (1976); *see also Nick R.*, 2009-NMSC-050, ¶¶ 18-19 (interpreting the intended meaning of "weapons" as used by the Legislature by consulting dictionaries to ascertain the word's ordinary meaning). Other definitions of "[to] show" include ". . . to make evident or apparent; . . . to give a reading of; . . . to set forth in a statement, account or description; . . . [and] to demonstrate or establish by argument or reasoning." *Webster's Dictionary* 2105. Definitions of "showing" as a noun include "a statement or presentation of a case or an interpretation of a set of facts" and "proof or prima facie proof of a matter of fact or law." *Id.* at 2106. *Black's Law Dictionary* 1385 (7th ed. 1999) defines a "showing" as "[t]he act or instance of establishing through evidence and argument; proof." Historically, *Black's Law Dictionary* 1086 (2d ed. 1910), *available* at http://blacks.worldfreemansociety.org/2/S/s1086.jpg, defined "[to] show" as "to make apparent or clear by evidence; to prove." Notably, this definition was available when the New Mexico Constitution was adopted in 1911. Based on the plain meaning of the term, we conclude that a "showing" of probable cause required under Article II, Section 10 is not limited to a writing that the issuing judge sees rather than hears or ascertains by other means. Rather, the plain meaning of "showing" as used in Article II, Section 10 is a presentation or statement of facts or evidence that may be accomplished through visual, audible or other sensory means.

**{15}** The focus of our interpretation is different than that of the Court of Appeals. It interpreted the operative constitutional clause to mean that a judge must actually see a written statement of probable cause prior to issuance of a search warrant. Our interpretation, based ultimately on the intent and purpose of the clause, focuses instead on how the probable cause statement is shown to the magistrate prior to issuance of a search warrant. We do not agree that the written statement has to be physically shown prior to the issuance of a warrant. Rather, the probable cause statement must be presented to the magistrate—either by audio, visual or other sensory means—by an officer, under oath, prior to issuance. Such a procedure does not eliminate the requirement that the probable cause statement be in writing, but rather provides flexibility, while still protecting the constitutional guarantees of privacy.

2. **OUR INTERPRETATION OF "SHOWING" DOES NOT LEAD TO INJUSTICE, ABSURDITY, OR CONTRADICTION AND IS CONSISTENT WITH THE SPIRIT OF THE CONSTITUTIONAL SEARCH WARRANT REQUIREMENT**

**{16}** Having determined that the plain meaning of "showing" in Article II, Section 10 of the New Mexico Constitution is a statement or presentation of evidence that may be accomplished by other than visual means, we must also consider whether "adherence to [our interpretation] would lead to injustice, absurdity or contradiction[.]" *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. If so, "we will reject the plain meaning in favor of an interpretation driven by the [constitutional provision's] 'obvious spirit or reason.'" *State v. Trujillo*, 2009-NMSC-012, ¶ 21, 146 N.M. 14, 206 P.3d 125 (quoting *Davis*, 2003-NMSC-022, ¶ 6). The "historical" purposes of the constitutional provision are instructive in determining the obvious "spirit . . . utilized in [its drafting]." *Davis*, 2003-NMSC-022, ¶ 6.

**a.** **THE PURPOSES OF THE CONSTITUTIONAL SEARCH WARRANT REQUIREMENT ARE TO PROVIDE ASSURANCE AGAINST UNREASONABLE INTRUSION AND GIVE NOTICE TO THE INDIVIDUAL WHO IS SUBJECT TO THE SEARCH**

**{17}** Article II, Section 10 of the New Mexico Constitution provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures[.]" Amendment IV of the United States Constitution provides this guarantee through the Equal Protection Clause in Amendment XIV, Section 1. Thus, law enforcement officers are required to obtain warrants to search private property in order "to prevent unreasonable invasions of the privacy rights of individuals." *State v. Ortega*, 117 N.M. 160, 162, 870 P.2d 122, 124 (1994). "A search warrant is used as a means to establish the reasonableness of an intrusion." *State v. Malloy*, 2001-NMCA-067, ¶ 9, 131 N.M. 222, 34 P.3d 611, *cert. denied*, 130 N.M. 722, 31 P.3d 380 (2001). The search warrant requirement exists "to provide the property owner assurance and notice during the search." *Id.* ¶ 11.

**{18}** We hold individuals' privacy rights in such high regard that we require every search warrant to be supported by a sworn, written statement of facts—an affidavit— showing probable cause. *See Ortega*, 117 N.M. at 162, 870 P.2d at 124; *accord* Rule 6-208(B) (stating that a search warrant issued by the magistrate court "shall contain or have attached the sworn written statement of facts showing probable cause for its issuance"); Rule 5-211(B) (same for the district court); Rule 7-208(B) (same for the metropolitan court); Rule 8-207(B) (same for the municipal court); *see also State v. Balenquah*, 2009-NMCA-055, ¶ 25, 146 N.M.267, 208 P.3d 912 ("[A] valid warrant *must* be supported by a sworn, written statement—that is to say, an affidavit."). "The purpose of an affidavit is to establish probable cause for the search and seizure." *Malloy*, 2001-NMCA-067, ¶ 16. In other words, the affidavit requirement gives individuals assurance that their property will not be subject to unreasonable searches by the state.

**{19}** In addition to establishing probable cause for the search, the search warrant and the affidavit referenced in the warrant also provide notice to an individual of the officer's authority and of the subject property the state has targeted for the search. Once an officer establishes probable cause and secures a warrant from the issuing court, the officer has the

6

right to enter the premises to be searched. *See Ortega*, 117 N.M. at 162, 870 P.2d at 124. However, our rules of criminal procedure for magistrate court also require that a person whose property is subject to search receive notice of the officer's authority. *See* Rule 6-208(D) ("The officer seizing property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the affidavit for search warrant, a copy of the search warrant and a copy of the inventory of the property taken or shall leave the copies of the affidavit for search warrant, the search warrant and inventory at the place from which the property was taken."); *see also* Rule 5-211(C) (same for the district court); Rule 7-208(C) (same for the metropolitan court); Rule 8-207(D) (same for the municipal court). "[P]roviding a copy of the search warrant gives the person to be searched notice of the officer's authority and what the officer is entitled to seize." *Malloy*, 2001-NMCA-067, ¶ 18. The search warrant itself authorizes the officer to conduct the search, and the affidavit referenced in the warrant provides a description of the property to be searched. *See id.* ¶ 19.

**b.    TELEPHONIC APPROVAL OF SEARCH WARRANTS INCURS NO INJUSTICE, ABSURDITY, OR CONTRADICTION AND PRESERVES THE INTENT AND PURPOSE OF THE CONSTITUTIONAL SEARCH WARRANT PROVISION**

**{20}**    The search warrant requirement—together with the constitutional mandate that a search warrant be supported by a sworn, written showing of probable cause—provides the total and permanent record for the individual whose privacy interest the state intrudes upon. This record serves two purposes:  assurance against unreasonable searches and notice to persons whose property is subject to search. Our interpretation of the word "showing" in Article II, Section 10 is fully consistent with these purposes that underlie our constitutional law.

**{21}**    Our amended rules of criminal procedure for the district courts and courts of limited jurisdiction now recognize the process of requesting and approving search warrants by telephone. *See* Rule 5-211(F) & (G); Rule 6-208(G) & (H); Rule 7-208(F) & (G); and Rule 8-207(G) & (H).  Notably, the amended rules contain the same requirements for executing a search warrant approved by telephone as were required before the amendment explicitly recognized telephonically approved search warrants. *Compare* Rule 5-211(C) (requiring an officer seizing property under the warrant to give the owner copies of (a) the search warrant; (b) the affidavit showing probable cause for the search; and (c) an inventory of the property seized), *with* Rule 5-211(C) (2008) (amended 2012) (listing the same requirements of an officer seizing property as under the amended rule); *accord* Rule 6-208 (D) NMRA (containing the same requirement for a search warrant obtained in magistrate court); Rule 7-208(C) NMRA (containing the same requirement for a search warrant obtained in metropolitan court); Rule 8-207(D) NMRA (containing the same requirement for a search warrant obtained in municipal court). Our interpretation of the word "showing" in Article II, Section 10 does not alter the purposes—notice and assurance against unreasonable searches—of the search warrant requirement. Whether a written "showing" is made by statement or presentation of evidence over the telephone, or presented for the judge's visual

7

review, the obvious spirit of the search warrant requirement is fulfilled.

## B. DEFENDANTS' POLICY ARGUMENTS ARE UNPERSUASIVE

**{22}** Using policy arguments, Defendants note that jurisdictions that recognize telephonic search warrants also impose additional procedural safeguards that law enforcement and court officers did not follow in this case. Defendants cite the Federal Rules of Criminal Procedure as well as caselaw from Illinois, Mississippi, New Jersey, and Washington.

### 1. ADDITIONAL PROCEDURAL SAFEGUARDS UNDER FEDERAL LAW APPLY ONLY IN CIRCUMSTANCES THAT DO NOT EXIST HERE

**{23}** Defendants point out that the Federal Rules of Criminal Procedure contain the requirements that an officer applying for a search warrant by telephone be placed under oath, that the telephone call be recorded, and that the recording be transcribed and certified. *See* Fed. R. Crim. P. 4.1. We are not persuaded that all of these procedures apply in this case.

**{24}** The federal rules provide that "[a] magistrate judge may consider information communicated by telephone or other reliable electronic means when . . . deciding whether to issue a warrant or summons." Fed. R. Crim. P. 4.1(a). If a federal magistrate judge proceeds under Rule 4.1, then "[t]he judge must place under oath—and may examine—the applicant and any person on whose testimony the application is based." Fed. R. Crim. P. 4.1(b)(1). The judge must also create a record of the testimony and exhibits, but the extent of the record depends on the number of witnesses and exhibits the judge decides to consider. *See* Fed. R. Crim. P. 4.1(b)(2). For example, the additional requirements that a telephone call be recorded, transcribed, and certified are not necessary in every case because "[i]f the applicant does no more than attest to the contents of a written affidavit submitted by reliable electronic means, the judge must acknowledge the attestation in writing on the affidavit." Fed. R. Crim. P. 4.1(b)(2)(A). A recording of the telephone call and a certified transcript are only necessary "[i]f the judge considers additional testimony or exhibits" apart from the testimony of the search warrant applicant. Fed. R. Crim. P. 4.1(b)(2)(B).

**{25}** In this case, only the procedures described in Federal Rule 4.1(b)(1) and (b)(2)(A) would apply because Officer Gray merely attested to the contents of a written affidavit over the telephone. Thus, under the federal rules, the magistrate judge would be required to place Officer Gray under oath and acknowledge his attestation on the affidavit. Based on the record before us, we conclude that the procedures required under federal law were actually satisfied in this case.

### 2. DEFENDANTS' RELIANCE ON CASELAW FROM OUTSIDE NEW MEXICO IS MISPLACED

**{26}** Defendants argue that New Mexico should not permit telephonic approval of search warrants because there are inherent dangers when a search warrant is issued in the absence

of face-to-face communication and because states that recognize telephonic warrants impose specific procedural safeguards to mitigate those dangers. *See, e.g.*, *People v. Taylor*, 555 N.E.2d 1218, 1220 (Ill. App. Ct. 1990); *White v. State*, 842 So. 2d 565, 570 (Miss. 2003); *State v. Valencia*, 459 A.2d 1149, 1155 (N.J. 1983); *State v. Myers*, 815 P.2d 761, 768 (Wash. 1991) (en banc). Defendants' reliance on these authorities is misplaced.

**{27}**    We point out that New Mexico's criminal statutes and procedural rules are distinguishable from those of Mississippi, New Jersey, and Washington. For example, the rules in Mississippi and New Jersey specifically require a judge issuing a search warrant to have face-to-face contact with a search warrant applicant, whereas the rules of New Mexico do not. *Compare* Miss. Code Ann. § 41-29-157(a)(2) (2005) (requiring search warrant affidavits to be "sworn to [in person] before the judge," *see White*, 842 So. 2d at 569 *and* N.J. Ct. R. 3:5-3(a) (1994)) (requiring search warrant applicants to "appear personally before the judge"), *with* Rule 6-208 (containing no such requirement). Because the laws of Mississippi and New Jersey impose more stringent requirements for issuing a search warrant, it follows that these states would also impose additional procedural requirements for requesting and approving a search warrant by telephone. This does not mean that such additional requirements must also apply in New Mexico. Therefore, Defendants' reliance on *White* and *Valencia* is misplaced.

**{28}**    The rules of criminal procedure in Washington differ from the rules in New Mexico, most notably in that Washington does not require a search warrant to be based on a "written" showing of probable cause. *Compare* Washington Courts of Limited Jurisdiction Criminal Rules Wa CrRLJ 2.3(c) ("There must be an affidavit . . . or sworn testimony establishing the grounds for issuing the warrant. The sworn testimony *may* be an electronically recorded telephonic statement." (emphasis added)), *with* Rule 6-208 (B) ("The warrant shall contain or have attached the sworn written statement of facts showing probable cause for its issuance[.]"). Since the rules in Washington do not require a "written" showing of probable cause, as the rules in New Mexico require, it follows that Washington would impose alternative procedures in lieu of the writing requirement in order to provide persons whose property is targeted for the search with reasonable assurance that there is probable cause to intrude upon their privacy interests. *See, e.g.*, Washington Courts of Limited Jurisdiction Criminal Rules Wa CrRLJ 2.3(c) ("The recording [of the sworn statement of probable cause], or a duplication of the recording, shall be a part of the court record and shall be [transcribed] if requested by a party or if ordered by the court[.]"). This does not mean these requirements must also apply in New Mexico. Lacking the requirement of a written showing of probable cause, the search warrant procedures under Washington's rules necessarily differ from those under New Mexico's rules. Since our rules have requirements distinguishable from those in the Washington Rules, Defendants' reliance on *Myers* is misplaced.

**{29}**    We also point out that the facts of the case before us are distinguishable from the facts in the case from Illinois on which Defendants rely. In *Taylor*, the Appellate Court of Illinois noted that the procedure used to obtain the search warrant lacked adequate procedural safeguards because "the judge issuing the warrant had no means of ascertaining

9

whether the complaint was in fact in writing and under oath[.]" 555 N.E. 2d at 1220. In the present case, the magistrate judge personally administered an oath to Officer Gray, and later placed his own handwritten signature on the typed affidavit. Moreover, the *Taylor* Court ultimately did not find the search warrant to be invalid because of procedural deficiencies; rather, it held that the search warrant was invalid because it was missing the date and time of issuance as required by Illinois statute. *See id.* at 1221; *see also* 725 ILCS 5/108-4(a) (2007) ("All warrants upon written complaint shall state the time and date of issuance . . . ."). In the present case, the search warrant does not contain the same fatal deficiencies. Therefore, Defendants' reliance on *Taylor* is misplaced.

**{30}** We are unpersuaded by any of the policy arguments that Defendants advance under federal law and other jurisdictions outside New Mexico to support their claim that the telephonically approved search warrant in this case should be invalid. Accordingly, we hold as a matter of law that the search warrant at issue here is valid.

## VI.    CONCLUSION

**{31}** We hold that telephonic approval of search warrants is consistent with Article II, Section 10 of the New Mexico Constitution and that Defendants' rights under Article II, Section 10 and the Fourth Amendment to the United States Constitution were not violated because the search warrant at issue in this case was valid. The Court of Appeals having decided to the contrary, we reverse.

**{32}    IT IS SO ORDERED.**


_____
    **BARBARA J. VIGIL, Justice**


**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Chief Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Boyse*, No. 33,257**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Cruelty to Animals

**CONSTITUTIONAL LAW**
Fourth Amendment
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL PROCEDURE**
Motion to Suppress
Peace Officer
Probable Cause
Search and Seizure
Warrant