This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            NO. 33,871

**MARIO ANTHONY DEPPERMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

{1} Does a valid warrant targeted at a specific residence permit the search and seizure of an unidentified duffel bag found on the premises even though it belongs to someone who is not a resident or occupant of the home? In the circumstances of this case we hold that it does, and affirm.

**BACKGROUND**

{2} Defendant Mario Depperman was sentenced to six and one-half years of incarceration for the possession of a controlled substance and the possession of drug paraphernalia obtained pursuant to a search warrant. Defendant appeals the district court's denial of his motion to suppress the evidence which led to his conviction.

{3} A district court granted a search warrant after determining there was sufficient probable cause for its issuance based on an the affidavit submitted by Agent Patrick Bucksath of the New Mexico State Police. The affidavit targeted a particular residence and its owner, Paul Chavez. The affidavit asserted that Chavez was selling methamphetamine, and that there were illegal narcotics located in his residence. The affidavit was based on an investigation that culminated in an operation in which a confidential informant, working with Agent Bucksath, purchased methamphetamine from Chavez at his residence. The affidavit included a description of the agent's training, experience, and knowledge concerning "the habits and methods used by those persons involved in the illegal . . . concealment methods of illegal controlled substances."

2

{4} In accordance with the information provided in the affidavit, the search warrant authorized the search of Chavez and his residence and the seizure of "[m]ethamphetamine, marijuana and stolen property" and "[a]ny and all classifiable drug paraphernalia that is used to weigh, package, ingest, inhale, inject, or otherwise be consumed." Defendant was not named or referenced in the affidavit.

{5} During the execution of the search warrant, agents discovered a duffel bag sitting on a shelf in the master bedroom of the residence. A search of the duffel bag revealed drug paraphernalia and a wallet containing Defendant's social security card. Prior to trial, Defendant filed a motion to suppress the evidence found in his duffel bag. At the close of the suppression hearing, the district court denied Defendant's motion. In its decision letter, the district court ruled that "[t]he Fourth Amendment requires that a warrant specifically name: (1) the places to be searched; and (2) the items to be seized," and that "[t]he valid warrant authorizes the executing officer to look for a particular item in any place it could be logically found . . . A [duffel] bag would be a logical place."

{6} Defendant does not dispute the validity of the search warrant as to Chavez and his residence. Instead, Defendant's arguments below and here focus on whether the search of Defendant's duffel bag fell within the scope of the warrant. At the suppression hearing, Agent Phil Caroland, the first person to discover and search Defendant's duffel bag, was the sole testifying witness. His testimony included his

role in the search and seizure of Defendant's duffel bag, including his understanding of the purpose of the warrant and the items to be seized.

**{7}** Agent Caroland testified that, during the execution of the warrant, he found the duffel bag sitting on a shelf located in the master bedroom of the Chavez residence. Additionally, he stated that he did not see anyone in the bedroom when he entered and began his search. When he opened the bag, he found a smaller bag (which he referred to as a "meth kit") containing drug paraphernalia, including baggies, spoons, and needles. After discovering the drug paraphernalia, Agent Caroland ceased his search of the bag and handed it over to Agent Bucksath. He later testified at trial that he did not see the wallet; instead it was Agent Bucksath who finally discovered it.

**{8}** At trial, Agent Bucksath testified as to his search of Defendant's duffel bag. He stated that, when he initially opened the duffel bag, he saw a smaller bag which he opened up to discover drug paraphernalia. Following his discovery of the drug paraphernalia, Agent Bucksath found a wallet that contained Defendant's social security card. Defendant was later identified as the owner of the social security card and the person who had fled from the residence when the search was executed.

**{9}** Defendant appeals the district court's denial of his motion to suppress. Because this is a memorandum opinion and because the parties are familiar with the case, we reserve further discussion of the facts for our analysis of Defendant's arguments on appeal.

**DISCUSSION**

{10}    Defendant makes two arguments on appeal. Defendant first argues that, although the search warrant was valid as to Chavez and his residence, the supporting affidavit did not establish probable cause to search Defendant's personal property and, therefore, the duffel bag was not within the warrant's scope. Defendant next argues that even if his duffel bag was searched by an officer in good faith, the evidence should be suppressed because New Mexico does not recognize the good faith exception to the exclusionary rule.

**A.    Standard of Review**

{11}    We review the order denying Defendant's motion to suppress as a mixed question of fact and law. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. In doing so, we view "the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785. However, "[w]hile deferring to the district court with respect to factual findings and indulging in all reasonable inferences in support of that court's decision, we nonetheless review the constitutional question of . . . reasonableness . . . de novo." *State v. Light*, 2013-NMCA-075, ¶ 19, 306 P.3d 534 (internal quotation marks and citation omitted).

**B.    Scope of the Search Warrant**

{12}    Defendant first argues that the officers acted outside the permissible scope of the warrant targeting Chavez and his residence. Article II, Section 10 of the New

Mexico Constitution provides that "[t]he people shall be secure in their . . . effects, from unreasonable searches and seizures[.]" Not all searches and seizures are protected under the New Mexico Constitution, "only unreasonable ones." *State v. Brusuelas*, 2009-NMCA-111, ¶ 9, 147 N.M. 233, 219 P.3d 1 (internal quotation marks and citation omitted). Therefore, the "ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable." *State v. Attaway*, 1994-NMSC-011, ¶ 20, 117 N.M. 141, 870 P.2d 103. "A search warrant is used as a means to establish the reasonableness of an intrusion [on an individual's privacy rights]." *State v. Malloy*, 2001-NMCA-067, ¶ 9, 131 N.M. 222, 34 P.3d 611. Moreover, New Mexico's requirement that a search warrant has to be supported by an affidavit showing probable cause ensures that individuals' property "will not be subject to unreasonable searches by the state." *State v. Boyse*, 2013-NMSC-024, ¶ 18, 303 P.3d 830.

{13} The primary issue before us is whether Defendant's duffel bag fell within the scope of the search warrant. This Court recently addressed the question of whether personal property belonging to a visitor, but found on the premises to be searched, falls within the scope of a valid warrant. *Light*, 2013-NMCA-075, ¶ 33. In *Light*, the defendant was attending an event at a public theater. *Id.* ¶¶ 15-18. A warrant to search the theater was obtained following an investigation of the theater owner for hosting parties where drugs were sold and consumed. *Id.* ¶ 3. The warrant authorized "a search

6

of [the theater owner], his residence, [and] the theater" and the "seiz[ure of] 'ecstasy pills in any shape, form, or size, and cocaine, marijuana, and drug paraphernalia' " *Id.* ¶ 13.

{14}   Pursuant to the warrant, officers secured the theater and detained all people present when the warrant was served, including the defendant. All of the people detained were searched and released. *Id.* ¶ 14. Before leaving, the defendant asked officers for her jacket and purse, which were located in the theater's storage room. *Id.* ¶ 16. Without first obtaining consent from the defendant, an officer searched her purse and found a small metal container containing methamphetamine. *Id.* ¶ 17. The defendant was charged with possession and moved to suppress the evidence found in her purse. *Id.* ¶ 18. At the suppression hearing, the officer who searched the purse testified "that before he opened the purse and container, he had no particularized suspicion that the purse contained contraband . . . and, after opening it, that he saw no obvious evidence of contraband or observed anything suspicious about the metal container." *Id.* ¶ 17. The district court granted the motion to suppress. *Id.* ¶ 18.

{15}   On appeal, we affirmed the district court's order. *Id.* ¶ 46. In agreeing with, and expanding on, the district court's ruling, we held that the search of the defendant's purse was invalid because the officer knew the purse belonged to the defendant, and because "[t]here [was] nothing in the affidavit or in the officers' testimony to suggest

7

that the purse was connected to the theater or to the illegal activity occurring there."
*Id.*

**{16}** Defendant argues that the reasoning in *Light* should apply here because, although the search warrant was valid as to Chavez and his residence, it "did not demonstrate authorization or even probable cause related to the duffel bag." In support of his argument, Defendant argues that there was no probable cause because the affidavit did not "address any suspicion as to activities involving [Defendant]." We disagree.

**{17}** In *Light*, this Court did not determine that there was a lack of probable cause as to the defendant's purse merely because the search warrant was based on a suspicion only as to the owner of the theater and the illegal activities happening at that location. Instead, we reasoned that the search was invalid because the officer was aware that the purse belonged to the defendant and he failed to ask for consent. 2013-NMCA-075, ¶¶ 16-17. Further, the officer testified that he had no suspicion that the purse contained contraband prior to his search. *Id.* ¶ 17. Thus, the search of the defendant's purse was invalid because no probable cause existed connecting the purse to the reason for the warrant.

**{18}** Here, as Defendant concedes, the officers had no notice that the duffel bag belonged to him. It was discovered in the master bedroom of the targeted residence and there was nothing on the outside of the bag indicating that it belonged to someone

other than the owner of the residence. In fact, the duffel bag's owner was not identified until after the officers found the drug paraphernalia. Furthermore, unlike in *Light*, there was testimony that, based on the officers' experience and training, the duffel bag was a reasonable place to search for the items being sought pursuant to the search warrant. Therefore, there was sufficient probable cause to search the duffel bag.

{19}     In conclusion, because there was no notice that the duffel bag belonged to Defendant, and testimony established that there was probable cause to support a reasonable belief that the bag was connected to the purpose of the search warrant, the duffel bag fell within the scope of the search warrant and its search was reasonable under the New Mexico Constitution.

**C.     Good Faith Exception**

{20}     Defendant's second argument is that, even if the agent was unaware that the duffel bag belonged to Defendant, the evidence should be suppressed because New Mexico does not recognize a good faith exception to the exclusionary rule. Courts generally recognize that evidence obtained pursuant to a warrant that is later invalidated should be suppressed under both the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. *State v. Gutierrez*, 1993-NMSC-062, ¶ 45, 116 N.M. 431, 863 P.2d 1052. However, federal and New Mexico courts have interpreted the application of this rule differently.

9

**{21}** The federal approach provides that evidence suppressed due to an invalid warrant under the exclusionary rule may be admitted if the officer's reliance on the invalid warrant was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). This good faith exception was founded upon an interest "to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916. In contrast, New Mexico rejects the federal good faith exception to the exclusionary rule.

**{22}** In *Gutierrez*, our Supreme Court held that the exclusionary rule in New Mexico was "incompatible with any exception based on the good[]faith reliance of the officer." 1993-NMSC-062, ¶ 55. The Court reasoned that Article II, Section 10's protection from unreasonable searches and seizures is best accomplished by "[d]enying the government the fruits of unconstitutional conduct at trial" and "preserving the rights of the accused to the same extent as if the government's officers had stayed within the law." *Id.*

**{23}** Here, New Mexico's exclusionary rule does not apply because, as we concluded above, the search of Defendant's duffel bag was lawful under Article II, Section 10. Thus, whether the search of Defendant's duffel bag was conducted in good faith is immaterial and we need not further address this argument.

**CONCLUSION**

10

**{24}** For the foregoing reasons, we affirm the district court's denial of Defendant's motion for suppression of the evidence found in his duffel bag.

**{25}** **IT IS SO ORDERED.**

                               _____

                                **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CYNTHIA A. FRY, Judge**